OLIVER TYPEWRITER CO. v. AMERICAN WRITING MACH. CO.

(Circuit Court, N. D. New York.   October 15, 1907.)

TRADE-MARKS AND TRADE-NAMES—SUIT FOR UNFAIR COMPETITION—PRELIMINARY INJUNCTION.

In a suit for unfair competition by defendant in obtaining and selling typewriters made by complainant at less than its established prices, and in so representing them in its circulars as to injure complainant's business, the showing made on an application for a preliminary injunction *held* not such as to entitle complainant to an injunction in advance of a full hearing on the merits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 108.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity.   Motion by complainant for preliminary injunction in suit to restrain acts alleged to constitute unfair competition in trade.

Poole & Brown, for complainant.

Gifford, Hobbs & Beard (Henry R. Follett, of counsel), for defendant.

RAY, District Judge.   The Oliver Typewriter Company is a corporation organized and existing under the laws of the state of Illinois and is engaged in making and selling typewriting machines under various letters patent, and which machines are known as "Oliver Typewriter" or "Oliver Machine."   It does a large and an extensive business and manufactures and sells an excellent machine of its kind, which meets with favor and large sales.   This machine has novel features and belongs to the type or class known as "visible writing" machines.   It is not made by the defendant, and defendant can only supply and sell such machines by purchasing same in the market or of complainant. Complainant has an established retail price for its machines—$100 and $97.50.   The complainant does not sell knowingly to its competitors in business or allow its agents so to do.   It has a price which its agents must pay in advance for typewriters ordered by them, varying from $60 to $75 per machine.   The agency contract or "agency arrangement" contains the following:

"Fifth. I understand that the retail price of the regular Oliver Typewriter is $95.00 without case, or $97.50 with case."

There is no license restriction on purchasers, or other contract restriction on agents, purchasers, or users.   As a consequence, the de-

fendant has been able to become the purchaser and owner of many of these Oliver typewriters at various times. Some were new, and some worn and required repairs. Being the owner and under no contract or license agreement or restriction, defendant has sold and caused to be sold such typewriters at its own prices, and has advertised Oliver typewriters for sale by it in the manner hereafter stated.

The defendant, American Writing Machine Company, is a corporation organized and existing under the laws of the state of New York, and acts as sales agent of a competing machine, "New Century," and has also taken up and is engaged in the business of purchasing and selling second-hand machines of all or nearly all makes, and, also, such new machines of all makes as it can obtain and handle at a profit. The defendant company has put out, or caused to be put out, a catalogue, stating therein, among other things:

"All Makes, Typewriters, all Prices. The Typewriter Exchange, 319 Dearborn St., Chicago, Executive Offices 343 Broadway, New York City. Please do not confuse us with irresponsible second-hand dealers. The Typewriter Exchange deals in used, shopworn, and rebuilt typewriters and has branches in [various cities named]. It is itself a branch of the American Writing Machine Company. * * * We offer you a chance for a choice, an opportunity for your selection; but if you are in doubt, we can advise you as no one else can. * * * Remember it is not what we want to sell you but what you want and ought to buy, because since we have every good typewriter manufactured, it makes no difference to us which one you buy, except we want you to be satisfied and pleased in order that you may become our permanent customer. We are here to sell you a typewriter, not any one to the exclusion of all others, but the one you want, the one best adapted to your requirements. Rebuilt Typewriters. The term 'second-hand' is often misunderstood. A new typewriter used for a month, a week, or for only a few days is 'second-hand'; but if it has not been abused or broken it is as good as when first bought. Some of our machines are scarcely worn at all. Just the tightening of a screw here or a new type there will sometimes put them in as good shape as when they left the factory. And then our prices are ever so much lower than the regular selling prices of the new machines. Our workmen are factory trained, expert, and experienced. We employ no other. When a typewriter leaves their hands we have no hesitation in guaranteeing it. A postal card will bring you samples of work and prices. Prices. In the following pages we have noted the approximate prices at which we are able to furnish the various typewriters. You can readily understand that prices are governed largely by supply and demand, as well as by the condition of the machines when they are received by us."

Then shipping terms are stated, including the offer to send machines on a deposit of $5 for examination and trial; the machine to be returned if not satisfactory, also the deposit, in such event, less transportation charges paid by defendant. Then follow pictures of various machines with names, and under each is stated "manufacturer's price" and "our price." This list includes "Remington," six styles; "Smith Premier," four styles; "Densmore," four styles; and several others. Then comes the following:

"On the following pages we quote prices on a number of cheap typewriters. Some of these machines are no longer manufactured, and it is difficult to get parts to repair them. However, they do nice work now, and we consider them worth the prices we ask. We cannot promise that they will do satisfactory work for any great length of time."

Then follows, "Oliver, No. 2, Model," the picture of such a typewriter, and, under it:

"Manufacturer's price, $95.00.   Our price $30 to $50.   No. 3 Model rebuilt, $40 to $55; No. 3 Model new, $65.00."

Then follow pictures of the "Bar Lock," "Bleckersderfer," "Hammond," "Chicago or Munson," "Wellington," "Williams," and "Jewett."

It is contended by the complainant that the "Oliver" is not only put in bad company, but represented as a "cheap" typewriter, not in price or cost alone, but in quality, workmanship, and efficiency, and that·defendant represents itself as able and prepared to sell the No. 3 model Oliver typewriter, new, at $65, when it is not, and that this, coupled with the fact that defendant has purchased some of the new Olivers of this model from complainant's agents and others and sold them at far less than the regular price, constitutes unfair competition in trade.

It can hardly be said that this catalogue necessarily represents untruly that defendant has supplied, and can supply, the new Oliver, No. 3 model, which has not been used at all, at $65, or at any other price. The prior statement is that "the Typewriter Exchange deals in used, shopworn and rebuilt typewriters," and "a new typewriter used for a month, a week, or for only a few days, is second-hand," etc.  In short, one that has been used a month, a week, or only a few days, is still "new" within the meaning of this catalogue.  If not abused or broken, "it is as good as when first bought."  "On the following pages we quote prices on a number of cheap typewriters."  Among them is the No. 3 model new Oliver, at $65.  The fair inference from the whole statement is that it has been used some, fixed over, or repaired to some extent, but that it is still a new typewriter, inasmuch as not one that has been in use long.  It is not a cut in the price of absolutely new Oliver typewriters, or a statement that such a repaired, made over, or slightly used typewriter is "cheap" in any sense except price or cost to the user.  It is not a statement that such typewriters as are here mentioned are inferior in workmanship or operation or efficiency, or that they are not desirable for any such reason.  Nor is it a statement on its face that new Oliver typewriters sold by it are "cheap" in the sense of inferiority in either workmanship, quality, or efficiency.  The defendant starts off in this catalogue with the express statement that it "deals in used, shopworn, and rebuilt typewriters," and that it has branches in New York City, Boston, Chicago, and other places.  It does appear that defendant has been able to purchase and sell some of the new Oliver typewriters, not used at all, and has sold them at about the price named in the catalogue.  There is some evidence tending to show that the defendant has induced complainant's agents to sell machines to them at less than the regular retail prices.  But defendant controverts this al·legation.

While complainant presents affidavits tending, perhaps, to show that these statements of the catalogue are used for other purposes and are intended to convey other impressions and belittle complainant's machines and interfere with its business, these are met and contradicted and explained to such an extent that in my judgment the court is not

justified in attempting to determine the controversy on these affidavits or on the showing made. There should be a full hearing and the benefit of an opportunity to cross-examine the witnesses. It cannot be said there is no substantial doubt of defendant's objects and purposes, or of the result of its acts. It cannot safely be said, on the whole case as presented and met by defendant, that defendant is intending to defraud, mislead, or deceive, or that it has done so. To determine now that complainant is entitled to a preliminary injunction is to pass on the merits of the case on conflicting affidavits. This court is not justified in holding, on the showing made, that defendant has induced complainant's agents, or any one of them, to violate their agency contracts, or that it purposes so to do. With reasonable diligence the evidence can be taken, witnesses cross-examined, and all the facts developed. The court can then render an intelligent judgment on the merits.

I do not think the case strong enough, or so free from doubt, as to justify the granting of a preliminary injunction. It is stated that, since complaint was made, defendant has issued a new catalogue omitting all reference to new Oliver typewriters. If so, complainant is now suffering no injury in that regard. I know of no law that forbids the defendant to purchase and sell new Oliver typewriters, or second-hand Oliver typewriters, after repair, if guilty of no fraud or misrepresentation or violation of contract in so doing. It is said that defendant by its advertisements induces would-be purchasers of the Oliver machine to visit or communicate with the defendant's salesmen or sales agents, who then misrepresent to them the character and efficiency of the Oliver machine and induce the intending purchaser to take some other machine. Defendant denies these alleged acts.

On the whole, as the case now stands, the application for a preliminary injunction must be denied. This court is not to be understood as approving some of the acts which seem to be conceded, or which at best are not disproved; but not all censurable acts constitute unfair competition in trade.